IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-03026-CNS-KAS

JOHN DIEDRICH,

    Plaintiff,

v.

OWNERS INSURANCE COMPANY, as subsidiary of Auto-Owners Insurance Company,

    Defendant.

_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

This matter is before the Court on **Defendant Owners Insurance Company's Oral Motion for a Protective Order** ("Motion for Protective Order") to prevent counsel for Plaintiff John Diedrich from examining Defendant's Fed. R. Civ. P. 30(b)(6) witness on topics that implicate the post-litigation claim file and post-litigation handling of Plaintiff's claims for insurance benefits. For the reasons discussed below Defendant's Motion for Protective Order is **denied**.

### I.     Background

This diversity action arises from two motor vehicle collisions that occurred on December 21, 2017, and February 13, 2020, and in which Plaintiff sustained injuries. *See Third Am. Compl.* [#43] ¶¶ 4-9, 13-18. At the time of those accidents, Plaintiff had an insurance policy with $250,000 in Underinsured Motorist (UIM) benefits per accident, which Plaintiff had purchased from Defendant. *Id*. ¶ 27. Since those accidents, Plaintiff has received various forms of medical treatment, and he submitted related medical

records to Defendant for payment of UIM benefits. *See id*. ¶¶ 29-30, 38-39, 45, 47-51. Plaintiff claims that Defendant "has yet to tender the UIM policy limits owed to Plaintiff for the second crash." *Id*. ¶ 51. He further claims that Defendant "[f]ail[ed] to conduct a reasonable investigation" and "[sought] to discover only evidence that reduced the amount of damages attributable to Plaintiff's claim by not investigating the medical issues in his claim[.]" *Id*. ¶¶ 73(c), (e). As a result, Plaintiff filed suit and asserts the following claims in connection with both accidents and his request for UIM benefits: (1) "underinsured motorist claim against Defendant Owners"; (2) breach of contract; (3) violation of Colo. Rev. Stat. §§ 10-3-1115(1)(A) and 10-3-1116(1); and (4) bad faith breach of insurance contract. *Id*. at 6-14.

On November 25, 2024, the Court held a discovery hearing to resolve disputes regarding various topics listed in Plaintiff's draft Fed. R. Civ. P. 30(b)(6) notice of Defendant. *See Courtroom Minutes* [#68]. The Court heard argument and resolved several disputes; however, it took under advisement the issue of whether to permit deposition topics that implicate the post-litigation claim file and post-litigation handling of Plaintiff's UIM claims. *Id*. at 2.

## II.     Legal Standards

The Federal Rules of Civil Procedure permit parties to obtain "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," considering factors including, "the importance of the issues at stake in the action" and "the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(1).

Federal Rule of Civil Procedure 26(c)(1) permits "[a] party or any person from whom discovery is sought [to] move for a protective order in the court where the action is pending," and, for good cause, a court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" A court may forbid the discovery, specify the terms for the disclosure or discovery, prescribe the discovery method, and forbid or limit inquiry into certain matters, among other actions. Fed. R. Civ. P. 26(c)(1)(A)-(H); *see also* Fed. R. Civ. P. 30(d)(3)(B) (permitting a court to limit the scope and manner of a deposition, "as provided in Rule 26(c)"). Additionally, Federal Rule of Civil Procedure 26(b)(2)(C)(iii) calls upon a court to limit the extent of discovery if it falls outside the scope permitted by Rule 26(b)(1).

### III.   Analysis

The Court has diversity jurisdiction over this matter and, therefore, it must apply state substantive law and federal procedural law. *See Bise v. Am. Fam. Ins. Co.*, No. 22-cv-03270-REB-KAS, 2024 WL 3023549, at *2 (D. Colo. May 7, 2024) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938); *Sims v. Great Am. Life Ins.*, 469 F.3d 870, 877 (10th Cir. 2006)). "[W]hen 'a state law excludes certain evidence in order to effect substantive policy considerations, Rule 401 acts to exclude the evidence since the proposition for which the evidence is submitted is not properly provable and, therefore, irrelevant to the claim." *Id.* (quoting *Sims*, 469 F.3d at 881).

#### A.   Overview of Foundational Case Law

The Colorado Supreme Court has explained that first-party claims between an insured and his insurer are different from third-party actions where an injured person sues a tortfeasor's insurer. *See Silva v. Basin W., Inc.*, 47 P.3d 1184, 1191 (Colo. 2002).

Specifically, "[t]hird-party personal injury tort claims involve liability investigations" that are conducted "in anticipation of claims which, if denied will likely lead to litigation." *Id*. Whereas, "when a first-party claim between an insured and his or her insurer is at issue, the insured is asking for payment under the terms of the insurance contract between him and the insurance company." *Id*. at 1192 (internal quotation marks and citation omitted). In the context of a first-party claim, "[t]he insurance company owes the insured a duty to adjust his claim in good faith," but that duty does not exist where an insurance company is presented with a third-party personal injury claim. *Id*. at 1192-93. Therefore, "[t]he scope of discovery of insurance information should . . . be broader in a first-party claim between an insured party and his insurer than in a third-party personal injury claim." *Id*. at 1192. Based on those principles, the *Silva* court declined to permit discovery on the insurance company's reserves and settlement authority because the lawsuit concerned a third-party personal injury tort claim. *Id*. at 1193.

The Colorado Supreme Court again addressed the scope of discovery in insurance litigation—specifically underinsured motorist litigation—in *Sunahara v. State Farm Mutual Automobile Insurance Company*, 280 P.3d 649 (Colo. 2012). There, the court upheld the exclusion from discovery of parts of an insurance claim file containing reserves and settlement authority and underlying liability assessments and fault evaluations. 280 P.3d at 652, 658. *Sunahara* concerned a first-party action brought by an insured against his insurer for UIM benefits after the plaintiff received payment under the tortfeasor's insurance policy. *Id*. at 652, 657-58. There was no dispute that the plaintiff bore no responsibility for the motor vehicle collision. *Id*. at 652. In discovery, the plaintiff requested that the defendant, his insurance company, produce the claim file it opened when the

4

plaintiff first informed the defendant of the accident. *Id*. The insurance company produced a redacted version of the claim file, and the plaintiff sought to compel production of the unredacted version. *Id*. On appeal, the Colorado Supreme Court reasoned that its *Silva* decision protected the redacted information from discovery. *Id*. at 655-56. Although the court acknowledged that the case before it was "factually distinguishable from *Silva*," which involved a third-party claim, it determined that *Silva*'s rationale applied "to protect from discovery the liability assessments and fault evaluations that State Farm used to develop its reserves and settlement authority." *Id*. at 656. In reaching that determination, the court reiterated *Silva*'s conclusions that reserves and settlement authority are irrelevant for three reasons: "(1) they do not accurately reflect the insurer's valuation of a particular claim; (2) they are not admissions of liability; and (3) insurance companies prepare them simply to satisfy statutory obligations and to establish bargaining tactics." *Id*. (citing *Silva*, 47 P.3d at 1188-91).

Even though *Sunahara* concerned a first-party claim where the plaintiff sued his insurance company for UIM benefits, the court reasoned that "[t]he UIM context of this case, however, places the insurance company in the 'unique role' of becoming almost adversarial to its own insured." *Id*. at 657 (citing *Peterman v. State Farm Mut. Auto. Ins. Co.*, 961 P.2d 487, 494 (Colo. 1998)). The "almost adversarial" relationship stems from UIM coverage's purpose: "to put a driver who is injured by an underinsured motorist in the same position as if the underinsured motorist had liability limits in amounts equal to the insured's coverage." *Id*. (citing *USAA v. Parker*, 200 P.3d 350, 358 (Colo. 2009)). Relatedly, "the fact-finder in a UIM case must weigh the evidence presented by the defendant insurance company, essentially standing in the shoes of the underinsured

5

motorist, against the evidence presented by the injured plaintiff." *Id*. The court further explained, that, while "[i]n bad faith and declaratory judgment actions, evidence of reserves and settlement authority could shed light on whether the insurance company adjusted a claim in good faith, or promptly investigated, assessed, or settled an underlying claim[,] . . . UIM actions differ from bad faith and declaratory judgment cases because, rather than defending its *own* actions, an insurance company in an UIM action must essentially defend the tortfeasor's behavior." *Id*. at 657-58 (emphasis in original). Hence, "evidence of the liability assessments and fault evaluations underlying reserves and settlement authority" is not relevant. *Id*. at 658.

**B.    Overview of Unreasonable Delay or Denial and Common Law Bad Faith Claims**

Before the Court delves any further, it pauses to reflect on a key difference between two claims Plaintiff has asserted in this case: a statutory claim for unreasonable delay or denial of benefits in violation of Colo. Rev. Stat. §§ 10-3-1115(1)(A) and 10-3-1116(1); and bad faith breach of insurance contract. A statutory claim arises when an "insurer delays or denies payment of an insurance benefit 'without a reasonable basis for that action.'" *Byron-Amen v. State Farm Auto. Ins. Co.*, No. 21-cv-02364-NYW, 2022 WL 1567563, at *4 (D. Colo. May 18, 2022) (citing Colo. Rev. Stat. § 10-3-1115(2); *State Farm Auto. Ins. Co. v. Fisher*, 418 P.3d 501, 506 (Colo. 2008)). Such a claim has two elements: "(1) the insurer delayed or denied payment of benefits to the insured, and (2) the delay or denial was without a reasonable basis." *Id*. (citing *Am. Fam. Mut. Ins. Co. v. Barriga*, 418 P.3d 1181, 1185-86 (Colo. 2018)). To assess reasonableness, the trier of fact will need to determine "whether the insurer's coverage decision was unreasonable

6

*when it occurred*," and the trier of fact must consider "the information that was before the insurer *at the time it made its coverage decision*." *Id*. at *7 (emphasis in original).

In contrast, "a common law claim for bad faith breach of insurance contract arises out of an insurer's duty of good faith and fair dealing" because of "the 'special nature of the insurance contract and the relationship which exists between the insurer and the insured[.]'" *Id*. at *4 (quoting *Goodson v. Am. Standard Ins. Co.*, 89 P.3d 409, 414 (Colo. 2004)). Like an unreasonable-delay-or-denial claim, a common law bad faith claim requires "a showing of unreasonable conduct on the part of the insurer," but a common law bad faith claim requires more of a plaintiff. *Id*. Specifically, the plaintiff must sufficiently establish "that the insurer knowingly or recklessly disregarded the validity of the insured's claim." *Id*. (quoting *Butman Fam. Inv. Ltd. P'ship Owners Ins. Co.*, No. 19-cv-016380-KLM, 2020 WL 1470801, at *8 (D. Colo. Mar. 25, 2020) (additional citations omitted)). Put differently, the plaintiff must show "that the insurer subjectively knew of, or recklessly disregarded, the unreasonableness of its conduct," *i.e.*, that the insurer "intentionally denied, failed to process, or failed to pay a claim without a reasonable basis.'" *Id*. (quoting *Zolman v. Pinnacol Assurance*, 261 P.3d 490, 497 (Colo. App. 2011)) (emphasis omitted).

There is no question that an "[insurer's] duty of good faith and fair dealing continues unabated during the life of the insurer-insured relationship"—even through a lawsuit—"although the adversarial nature of such proceedings may suspend the insurer's obligation to negotiate as a reflection of good faith." *Sanderson v. Am. Fam. Mut. Ins. Co.*, 251 P.3d 1213, 1217 (Colo. App. 2010); *see also Bucholtz v. Safeco Ins. Co. of Am.*, 773 P.2d 590, 592-93 (Colo. App. 1988) (noting that "any obligation to negotiate as a reflection of good faith may be suspended temporarily by collateral circumstances."); *cf. Silva*, 47

7

P.3d at 1193 (stating, "[i]n a first-party claim, the insurance company owes a duty to its insured to adjust a claim in good faith that the insurance company does not owe [in third-party claims]"). However, a question exists as to whether that continued duty of good faith and fair dealing renders evidence regarding post-litigation claim handling relevant.

### C.     Discoverability of Post-Litigation Claim Handling

Whether post-litigation claim files are discoverable in a first-party UIM case was recently addressed in this District in *Lynn v. State Farm Mutual Automobile Insurance Company*, --- F. Supp. 3d ----, 2024 WL 4180731 (D. Colo. Sept. 6, 2024). Like the matter now before the Court, *Lynn* involved claims for breach of contract, statutory unreasonable delay and denial of insurance benefits, and bad faith breach of insurance contract. *See Compl.* [#5], Case No. 23-cv-03222-MDB. Additionally, like Plaintiff in this case, the *Lynn* plaintiff alleged that the insurer "fail[ed] to reasonably investigate [the plaintiff's] claim in good faith[.]" *Id.* ¶ 84(a). In *Lynn*, the plaintiff sought discovery of post-litigation claim evaluation materials because of the insurer's unabated duty of good faith and fair dealing and the materials' purported relevance to the plaintiff's claim that the insurer failed to conduct a reasonable investigation and had unreasonably delayed and denied benefits. *Lynn*, 2024 WL 4180731, at *1. Because the parties had agreed that the tortfeasor's negligence caused the accident, the tortfeasor's conduct was a non-issue in that case and only the insurer's conduct was at issue. *Id.* at *3. Thus, the court distinguished the situation before it from the situation presented in *Sunahara* and reasoned that because the situation before it "arises in the context of a first-party UIM claim where only the insurer's conduct is at issue, the scope of discovery into the insurer's conduct is

8

necessarily broader than it might be in a third-party claim or a first-party UIM claim where the *tortfeasor's* conduct is at issue." *Id*. (emphasis in original).

The court proceeded to consider two key principles in insurance cases: (1) an insurer's continued duty of good faith and fair dealing to its insured, irrespective of whether litigation has commenced; and (2) the suspension of an insurer's derivative duty to negotiate, settle, or pay an insured's claim when an adversarial proceeding is filed *and* when a genuine disagreement exists as to the amount of compensable damages. *Id*. With these two principles in mind, the court noted that "litigation suspends *some, but not all*, of the insurer's duties to its insured" and reasoned that post-litigation activity "is still relevant to an insurer's ongoing duty of good faith and fair dealing"—"even if post-litigation activity has no relevance to an insurer's suspended duties[.]" *Id*. (emphasis in original) (citing *Bise*, 2024 WL 3023549, at *5 (noting that a suspension of an insurer's duty to negotiate does not impact post-litigation claim handling's relevance to claims of breach of insurance contract, unreasonable delay or denial, and common law bad faith).

As in *Bise*, which also involved claims of breach of contract, bad faith breach of contract, and statutory unreasonable delay or denial of insurance benefits,[1] the *Lynn* decision concluded that "[p]ost-litigation claim activity is still relevant to the separate and unabated duty of good faith and fair dealing." *Lynn*, 2024 WL 4180731, at *3. *Lynn* thus departed from another case in this District, which found post-litigation claim activity irrelevant to a first-party UIM claim because an insurer's duty to negotiate, settle, and pay

---

[1] *See Compl.* [#7], Case No. 22-cv-03270-REB-KAS. Like Plaintiff and the *Lynn* plaintiff, the *Bise* plaintiff challenged the reasonableness of the insurer's investigation.  *See id*. ¶¶ 94(a) ("[f]ailing to conduct a timely investigation"), 94(f) ("Failing to diligently search for evidence supporting Mr. Bise's claims"), 94(g) ("Seeking to discover only evidence that defeated Mr. Bise's claims").

9

was suspended even though an insurer's "duty of good faith continues." *Johnston v. Standard Fire Ins. Co.*, No. 20-cv-02106, 2022 WL 1225311, at *4-5 (D. Colo. Apr. 25, 2022).[2] In departing from *Johnston*, the *Lynn* decision alluded to additional information the insurer had obtained through discovery about the plaintiff's claimed injuries and employment and pointed to the insurer's acknowledgment that it "continue[d] to review information obtained post-suit." *Lynn*, 2024 WL 4180731, at *4 (citation omitted). The court thus reasoned that the plaintiff "is entitled to know whether that review has been conducted in good faith and whether [the insurer] is adhering to its duty of good faith and fair dealing." *Id*.

Here, the Court agrees with *Lynn* and *Bise* and finds that Plaintiff Diedrich is entitled to know whether Defendant Owners Insurance Company has continued to operate in good faith. Simply put, discovery regarding Defendant's post-litigation claim handling—including handling of information received from Plaintiff—is relevant to Plaintiff's bad faith claim and, by extension, Plaintiff's breach of insurance contract and unreasonable delay or denial of benefits claims. *See Bise*, 2024 WL 3023549, at *5. That discovery will shed light on whether Defendant delayed or denied payment of UIM benefits without a reasonable basis and whether Defendant knowingly or recklessly disregarded the validity of Plaintiff's claim.

The parties' court filings indicate that Defendant has continued to receive information about Plaintiff's injuries and insurance claims post-suit. The Third Amended Complaint [#43] contains the following allegations:

---

[2] During the discovery hearing, defense counsel relied upon *Johnston* in support of Defendant's Oral Motion for a Protective Order. *Audio Recording, Nov. 25, 2024 Discovery Hearing*, 55:01-56:39.

10

> On October 25, 2023, Plaintiff's counsel emailed Defendant's counsel regarding Plaintiff's lumbar fusion procedure he needs as a result of the second [2020] collision. Plaintiff's counsel requested Defendant do the right thing and tender the UIM policy limits owed to Plaintiff for the February 13, 2020 crash to cover this $400,000 procedure.

*Id*. ¶ 47.

> On October 27, 2023, a claims adjuster for Defendant Owners responded to the request for UIM policy limits and requested additional medical records, bills, and provider contacts, all of which Defendant already had authorizations for and Plaintiff had previously provided throughout the litigation process for the first crash.

*Id*. ¶ 48.

Additionally, the entered Scheduling Order [#36] contains the following representations from Plaintiff:

> Plaintiff and Defendant have been in litigation in Colorado State Court since November 25, 2022[,] for the 2017 Claim (the tortfeasor from the 2020 Collision was also a Defendant in that Action). To this point, Defendant has done several depositions in the case of many medical providers that have treated Plaintiff for both Collisions. Defendant requested (and received) all of Plaintiff's medical records from both collisions by subpoena with a signed medical authorization. They have done a full investigation into both claims during the Colorado State Court litigation and have had more than enough information to fairly evaluate both of Plaintiff's Claims.
>
> *Scheduling Order* [#36] at 4.

Defendant is entitled to seek discovery regarding Defendant's continued handling of his claim.

The Court finds no conflict between its conclusion that, in this first-party UIM case, Defendant's post-litigation claim handling is relevant to Plaintiff's bad faith claim and the Colorado Supreme Court's holding in *Sunahara*. The *Sunahara* holding rested on the "almost adversarial" relationship between an insurer and its insured in the UIM context and determined that "evidence of the liability assessments and fault evaluations underlying reserves and settlement authority" is not relevant. *Sunahara*, 280 P.3d at 657-

11

58. Here, however, the parties' discovery dispute does not exclusively concern information about reserves and settlement authority and the related liability assessments and fault evaluations. Thus, the "almost adversarial" relationship between Plaintiff and Defendant does not control the outcome. What controls, however, is the quasi-fiduciary relationship that exists between an insurer and its insured due to "the special nature of uninsured motorists coverage[.]" *Brekke*, 105 P.3d at 188. The adversarial relationship inherent in the UIM context does not "vitiate the underlying contractual and quasi-fiduciary duty that the insurer owes its insured." *Peterman v. State Farm Mut. Auto. Ins. Co.*, 961 P.2d 487, 494 (Colo. 1998). Rather, because of the adversarial relationship, "public policy mandates a higher standard of conduct for the insurance carrier, as a conflict of interest arises" between an insurer and its insured who seeks UIM benefits. *Pham v. State Farm Auto. Ins. Co.*, 296 P.3d 1038, 1050 (Colo. 2013) (Hobbs, J., dissenting); *see also Sunahara*, 280 P.3d at 657 (discussing the adversarial nature of the insurer "naturally attempt[ing] to minimize the plaintiff's damages . . . because doing so serves the company's financial interests.").

One aspect of that quasi-fiduciary relationship "is the insurance provider's duty to investigate and adjust a claim in good faith." *Brekke*, 105 P.3d at 189; *see also Ortiz v. Progressive Direct Ins. Co.*, 554 P.3d 537, 543 (Colo. App. 2024) (explaining, the "special nature of U[I]M coverage . . . creates a quasi-fiduciary relationship between an insurer and its insured," which requires an insurer "to investigate and adjust a claim in good faith."). An insurance provider's failure to "investigate and process the insured's uninsured motorist claim in good faith. . . [is] inconsistent with its relationship to the insured." *Brekke*, 105 P.3d at 189. The adversarial nature of this UIM first party lawsuit does not suspend

Defendant's duty to investigate. *Cf. Sanderson*, 251 P.3d at 1217 (noting that the adversarial nature of a lawsuit "may suspend the insurer's obligation to negotiate as a reflection of good faith"); *Rabin v. Fid. Nat'l Prop. & Cas. Ins. Co.*, 863 F. Supp. 2d 1107, 1113 (D. Colo. 2012) (noting the suspension of "an insurer's derivative duty to negotiate, settle, or pay"); *Lynn*, 2024 WL 4180731, at *3 (reasoning that litigation suspends only some of an insurer's duties to the insured).

If discovery is not permitted, Plaintiff will never know if Defendant continued to investigate and adjust his claim in good faith and whether it delayed or denied UIM benefits without a reasonable basis or knowingly or recklessly disregarded the validity of Plaintiff's claim. Moreover, "[t]he fact that a claim is fairly debatable does not mean the position of the insurance company in that debate necessarily is correct or reasonable." *Bise*, 2024 WL 3023549, at *4. Plaintiff is permitted to examine Defendant's Fed. R. Civ. P. 30(b)(6) witness on topics that implicate the post-litigation claim file and post-litigation handling of Plaintiff's claims for insurance benefits. *Cf. Lynn*, 2024 WL 4180731, at *4 (finding that the plaintiff "is entitled to know whether" the insurer has reviewed in good faith additional information provided to it "and whether [the insurer] is adhering to its duty of good faith and fair dealing"); *Bise*, 2024 WL 3023549, at *5 (deeming post-litigation claim handling discoverable evidence).

## CONCLUSION

Based on the foregoing,

IT IS HEREBY **ORDERED** that Defendant Owners Insurance Company's Oral Motion for a Protective Order, which was made during a November 25, 2024 Discovery Hearing, is **DENIED**.

IT IS FURTHER **ORDERED** that Plaintiff John Diedrich is permitted to examine Defendant's Fed. R. Civ. P. 30(b)(6) witness on topics that implicate the post-litigation claim file and post-litigation handling of Plaintiff's claims for insurance benefits.

Dated: January 21, 2025

BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge